The Honorable Richard A. Jones

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| JUSTIN PENWELL; GEORGIA BAKKE-TULL; JORDAN ENYEART; and MILDRED UZOMA,<br><br>Plaintiffs,<br><br>v.<br><br>PROVIDENCE HEALTH & SERVICES,<br><br>Defendant. | CASE NO. 2:19-cv-01786-RAJ<br><br>**ORDER** |

This matter comes before the Court on Defendant's motion to dismiss Plaintiffs' amended complaint. Dkt. # 26. Having considered the submissions of the parties, the relevant portions of the record, and the applicable law, the Court finds that oral argument is unnecessary. For the reasons below, Defendant's motion to dismiss is **GRANTED.**

## I.  BACKGROUND

Plaintiffs Jordan Enyeart, Georgia Bakke-Tull, and Mildred Uzoma ("Plaintiffs") are employees of Providence Health & Services ("Providence" or "Defendant") and participants in the Swedish Health Services Employee Benefits Plan ("Swedish Welfare

ORDER - 1

Plan") or the Providence Health & Services Employee Benefits Plan ("Providence Welfare Plan") (collectively, the "Plans"). Dkt. # 24 at 2-4. Plaintiffs "are required to pay deductibles, co-pays, co-insurance, facility fees, pharmacy co-pays and co-insurance, and other payments while utilizing the Plans." Dkt. # 24 ¶ 9. Plaintiff Justin Penwell is no longer an employee or participant in a Providence plan. *Id.* ¶ 3. However, he remains a Plaintiff in this action. *Id.* Plaintiffs allege that Providence is the plan administrator for both Plans.[1] *Id.* ¶¶ 14, 23.

In early 2019, after noticing an increase in premiums, Plaintiffs requested information about network pricing from Defendant. *Id.* ¶ 38. The request included several categories of documents including (1) "the annual renewal document for 2017, 2018, and 2019," (2) "a complete schedule or set of schedules of the negotiated payment rates applicable to each of the Plans' participating network providers ('Network Providers') for goods and services provided to participants that are covered by the Plans," (3) "a complete set of each of the contracts or agreements between the Plans and each Network Provider," (4) "all documents specifying the methodology by which actual payment amounts to plan providers are determined, as well as the underlying data and information by which such payment rates are determined," and (5) "any other documents under which the Plans are maintained or administered." *Id.* ¶ 39. Plaintiffs based these requests on ERISA section 104(b) which requires a plan administrator "upon written request of any participant or beneficiary" to "furnish a copy of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the

---

[1] As noted in the Court's prior order, Providence refutes that it is the plan administrator for either Plan but argues that the Plaintiffs' Amended Complaint fails as a matter of law even if Defendant were the plan administrator. The Court need not, therefore, resolve this factual matter at this juncture. Dkt. # 26 at 6, n.6.

ORDER - 2

plan is established or operated." 29 U.S.C. § 1024(b)(4); *Id.* ¶ 41.

At the end of January 2019, Providence responded to Plaintiffs' initial request by "providing the Health and Wellness Benefit Plan Document, with amendments; a summary plan description; and open enrollment information for the 2017, 2018, and 2019 plan years." *Id.* ¶ 49. Plaintiffs allege that Providence informed them that "it did not possess documents that would be responsive to the remainder of the requests, such as schedules of negotiated payment rates." Dkt. # 24 ¶ 50; *see* Dkt. # 13-2 at 2. About a month later, Plaintiffs made a second request for the same documents. Dkt. # 24 ¶ 54. In a letter dated April 12, 2019, Providence informed Plaintiffs that "the documents requested are either nonexistent or not in our possession" and "ERISA does not require a plan administrator to create documents or produce documents it does not have." Dkt. # 24 ¶¶ 56-57; Dkt. # 13-4 at 2-5. In response, Plaintiffs submitted a third and final request for the same information, noting that "ERISA [requires] a plan administrator to create and produce documents that it does not have, when such documents are required to be furnished." Dkt. # 24 ¶¶ 58-59. Providence did not respond to Plaintiffs' final request. *Id.* ¶ 61.

Plaintiffs filed a complaint in this Court on November 4, 2019, seeking specific performance and civil penalties based on Providence's alleged failure to provide the requested documents and information under 29 U.S.C. § 1024(b). *See generally* Dkt. # 1. Defendant moved to dismiss the complaint for failure to state a claim under Rule 12(b)(6) on December 20, 2019. *See generally* Dkt. # 12. On June 5, 2020, the Court granted Defendant's motion with leave to amend. Dkt. # 23 at 7. Plaintiffs timely filed an amended complaint on June 19, 2020. *See generally* Dkt. # 24. Defendant now moves to dismiss Plaintiffs' amended complaint under Federal Rule of Civil Procedure 12(b)(6). Dkt. # 26 at 5, 13.

ORDER - 3

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a complaint for failure to state a claim. Fed. R. Civ. P. 12(b)(6). The court must assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). A court "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Instead, the plaintiff must point to factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Twombly*, 550 U.S. at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

On a motion to dismiss, a court typically considers only the contents of the complaint. However, a court is permitted to take judicial notice of facts that are incorporated by reference in the complaint. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("A court may . . . consider certain materials documents attached to the complaint, documents incorporated by reference in the complaint"); *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) ("[I]t is proper for the district court to 'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss'"). With these principles in mind, the Court turns to the instant motion.

## III. DISCUSSION

In their amended complaint, Plaintiffs reassert their claim that they are entitled to the documents they requested based on ERISA Section 104(b)(4), which requires a plan administrator "upon written request of any participant or beneficiary" to "furnish a copy

ORDER - 4

of the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Dkt. # 24 ¶ 41 (citing 29 U.S.C. § 1024(b)(4)). In an attempt to cure the deficiencies identified by the Court in their prior complaint, Dkt. # 23 at 6, Plaintiffs incorporated new factual allegations in explanation of their requests. Dkt. # 24 ¶¶ 43-47. Specifically, Plaintiffs allege that the requested documents (1) include information about pricing details and how pricing is determined, (2) determine out-of-pocket costs for goods and services covered by the Plans, (3) allow Plaintiffs to determine whether they are receiving the most beneficial network prices, and (4) provide information about the maintenance and administration of the plans. Dkt. # 24 ¶¶ 43-47. Plaintiffs allege that "each of Plaintiffs' written document requests are made up of requests specifically associated to network pricing attributed to medical or prescription coverage, as they relate to and ultimately affect pricing details and Plaintiffs' out-of-pocket costs." Dkt. # 29 at 11. Plaintiffs claim that Defendant is required to produce all requested documents because they are "instruments under which the plan is established or operated." Dkt. # 24 ¶ 48 (citing 29 U.S.C. § 1024(b)(4)).

      The Court is unconvinced. Plaintiffs' unaltered request for the same categories of documents remains incredibly broad and Plaintiffs' attempt to fit each document in the catch-all provision of Section 104(b)(4) is unavailing. The Ninth Circuit has adopted a narrow interpretation of the term "other instruments" as "limited to the class of objects that specifically precedes it." *Shaver v. Operating Eng'rs Local 428 Pension Trust Fund*, 332 F3d. 1198, 1202 (9th Cir. 2003). The Ninth Circuit specifically declined to interpret the statute to "require general disclosure," explaining that broad disclosure "is not supported by either the language of the statute or its legislative history." *Hughes Salaried Retirees Action Comm. v. Adm'r of Hughes Non-Bargaining Ret. Plan*, 72 F.3d

ORDER - 5

686, 691 (9th Cir. 1995). The provision "requires disclosure of only the documents described with particularity and 'other instruments' similar in nature." *Id.* Indeed, disclosure under this provision is limited to "documents that provide individual participants with information about the plan and benefits." Dkt. # 23 at 5 (citing *Hughes*, 72 F.3d at 690). The Ninth Circuit further limited the definition of "other instruments" to "legal documents that describe the terms of the plan, its financial status and other documents that restrict or govern the plan's operation." *Shaver*, 332 F3d. at 1201-02.

Plaintiffs fail to show that the documents they request are either legal documents or relevant to Plaintiffs' plans and benefits. For example, Plaintiffs' request for "all documents specifying the methodology by which actual payment amounts to plan providers are determined, as well as the underlying data and information by which such payment rates are determined" fails on both counts. Dkt. # 24 ¶ 39. The Court finds that "all documents" on payment methodology, calculations, and the "underlying data" are not limited to legal documents. *Shaver*, 332 F.3d at 1202 (finding that "other instruments" should be limited to "legal documents that describe the terms of the plan, its financial status, and other documents that restrict or govern the plan's operation"). Defendant raised this argument in its motion to dismiss. Dkt. # 26 at 8. Plaintiffs failed to respond. Dkt. # 30 at 2. Plaintiffs nonetheless attempt to justify their request by noting that such information is relevant to Plaintiff's determination as to whether they are receiving the most beneficial network prices. Dkt. # 24 ¶ 46. This request does not, however, inform Plaintiffs of their benefits under the plan and is therefore beyond the scope of ERISA Section 104(b)(4). *Hughes*, 72 F.3d at 690.

Plaintiffs' request for "a complete schedule or set of schedules of the negotiated payment rates applicable to each of the Plans' participating network providers . . . for goods and services provided to participants that are covered by the Plans," Dkt. # 24 ¶ 39,

ORDER - 6

is similarly untenable.[2] Plaintiffs argue that such documents fall within the "other instruments" category because they determine out-of-pocket costs for goods and services covered by the Plans. *Id.* ¶ 44. Defendant contends that the price a provider has negotiated for any given service does not inform Plaintiffs about their benefits, particularly where the requests are not tied to any benefit claim. Dkt. # 26 at 10. The Court agrees. Moreover, information on pricing, including out-of-pocket limits, co-pays, deductibles, and other relevant calculations was made available to Plaintiffs through summary plan descriptions that were provided. Dkt. # 26 at 11; Dkt. # 24 ¶ 49. The Court finds that the schedules do not govern the operation of the plans and fall outside the scope of ERISA 104(b)(4).

Next, Plaintiffs' request for "a complete set of each of the contracts or agreements between the Plans and each Network Provider" is, again, overly broad. Dkt. # 24 ¶ 39. Plaintiffs allege that they are entitled to network provider contracts because they provide pricing information, Dkt. # 24 ¶ 45, and "directly impact[]" their premiums, deductibles, co-pays, and co-insurance, among other fees. *Id.* ¶ 36. However, as Defendant points out, these contracts could not be used to determine any out-of-pocket expense for any of the Plaintiffs in the absence of an actual claim. Dkt. # 26 at 11. Moreover, Defendant argues that "documents relating to generalized network provider agreements for every network provider for every covered service would require the plan administrator to turn over information about potential plan expenditures which do not inform Plaintiffs about their plan benefits." Dkt. # 26 at 10. This broad request does not inform Plaintiffs of

---

[2] Defendant argues that "[w]e do not possess other documents that would be responsive to [Plaintiffs'] request such as schedules of negotiated payment rates as the Plan Administrator does not determine payment rates and the Plan does not contract with 'Network Providers.'" Dkt. # 26 at 3-4 (citing Dkt. # 13-2 at 2-5). The Court considers whether such documents would fall within the ERISA disclosure requirement as a matter of law.

ORDER - 7

*their* benefits under the plan and does not fall within the scope of Section 1024(b)(4). *See Hughes*, 72 F.3d at 690; *Shaver*, 332 F.3d at 1202; *DeBartolo v. Blue Cross/Blue Shield of Ill.*, No. 01 C 5940, 2001 WL 1403012, at *7 (N.D. Ill. Nov. 9, 2001) (finding that "usual and customary" charges for medical expenses "[did] not inform plan participants and beneficiaries about their rights under the plan" and thus "[was] not the type of information an ERISA plan administrator is required to disclose under 29 U.S.C. § 1024(b)(4)").

Plaintiff's request for "any other documents under which the Plans are maintained or administered" is neither limited to legal documents nor sufficiently narrow in accordance with the controlling case law. Dkt. # 24 ¶ 39. Plaintiffs' allegation that they are entitled to such documents under Section 1024(b)(4) because the documents provide them "with information about and explanations on the maintenance and administration of the [Plan]," Dkt. # 24 ¶ 47, ignores the binding case law that requires narrow interpretation of "other instruments" and fails to show that such a broad category of documents is relevant to inform each Plaintiff of his or her own plan or benefits. *See Hughes*, 72 F.3d at 690.

Finally, Plaintiffs' requests for the annual renewal documents for 2017 through 2019 do not pass muster. Dkt. # 24 ¶ 39. Defendant claims that "[a]nnual renewal documents relate to renewal of insurance policies for insured plans . . . [and] there were no such documents because the Plans are self-funded." Dkt. # 26 at 5, n.5 (citing Dkt. # 13-4 at 2-5). This raises a question of fact that cannot be resolved at this stage. However, even if such documents did exist, the Court finds they do not fall within Section 1024(b)(4). Plaintiffs allege that these documents are "other documents" under the statute because they "include information about and explanations of pricing details and the procedures under which the pricing details are determined." Dkt. # 24 ¶ 43.

ORDER - 8

However, Defendant argues that "[g]eneralized network pricing information requests unrelated to any benefit claim . . . are neither legal documents under which the Plans are operated nor . . . set out a participant's rights and duties under the Plans." Dkt. # 26 at 7 (citing *DeBartolo*, 2001 WL 1403012 at *7). The Court finds that these documents are not documents under which the plan is established or operated.

Plaintiffs assert that they are entitled to the documents despite the narrow definition established by the Ninth Circuit because the documents they requested provide individual participants with information about the plan and benefits. Dkt. # 29 at 10. Plaintiffs rely primarily on *Eden Surgical Center v. Budco Group, Inc.* to support their assertion. *Id.* at 12 (citing 2010 WL 2180360 (C.D. Cal. May 27, 2010)). However, the requested documents at issue in *Eden Surgical Center* involved a fee schedule and methodology for calculating costs related to a particular claim, or documents "relevant to the processing and re-pricing of the *subject adverse benefit determinations*." 2010 WL 2180360, at *1 (emphasis added). The court noted that disclosure of such documents "gives full effect to the purpose of the statute, which is to let the individual participant [to] know[ ] exactly where he stands with respect to the plan." *Id.* at *7 (internal quotations and citation omitted). The court ruled that the plaintiff was entitled to the documents used in reaching the adverse benefit determination of the individual with the claim at issue and information used to calculate benefits with respect to the pertinent claim. *Id.* at *10.

Plaintiffs' broad requests here exceed the purpose and scope of the statute as they are not limited to information on where each Plaintiff "stands with respect to the plan." Instead their requests encompass a tremendous amount of information that is wholly unrelated and irrelevant to where they stand and what their rights are under the plan. The Court finds that such a distinction between the requested documents renders *Eden*

ORDER - 9

*Surgical Center* unpersuasive in the matter at hand.  Plaintiffs point to two similarly distinguishable cases.  In one, the court found that former employees were entitled to documents in connection with a claim for vested benefits where the employees "alleged that their vested benefits were improperly computed."  *Werner v. Morgan Equip. Co.*, No. C-92-0393-JPV, 1992 WL 453355, at *3 (N.D. Cal. Aug. 5, 1992).  In the second case, the court found that employees' request for "an administration manual that contained charts essential to the calculation of retirement benefits" was permissible as it was an instrument that governed the plan.  *Lee v. Dayton Power & Light Co.*, 604 F. Supp. 987, 1002 (S.D. Ohio 1985).  Unlike the present case, the requested documents in *Werner* and *Lee* were essential to the determination of benefits.

Similarly, the Court is unconvinced by Plaintiffs' reliance on nonbinding Department of Labor guidance.  *Patelco Credit Union v. Sahni*, 262 F.3d 897, 908 (9th Cir. 2001) (finding that a Department of Labor advisory opinion is not binding authority).  The Court also finds that the Executive Order referred to by Plaintiffs is inapplicable because it refers to hospitals, as opposed to plan administrators.  Exec. Order No. 13877, 84 Fed. Reg. 30849 (June 24, 2019).

The Court finds that Plaintiffs' amendments are insufficient to remedy the deficiency identified by this Court in its prior complaint.  Dkt. # 23 at 6.  Plaintiffs continue to recite the statutory elements in conclusory fashion and fail to point to factual allegations that "state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 568.  Based on this conclusion, the Court need not address subsequent arguments relating to control of the requested documents, clear notice, standing, and civil penalties.  Dkt. # 29 at 8, 21, 23-24.  For this reason, the motion to dismiss is **GRANTED**.

## IV.   CONCLUSION

For the reasons stated above, the Court finds that Plaintiffs' complaint fails to state

ORDER - 10

a claim for relief under Rule 12(b)(6).  Defendant's motion is **GRANTED** and Plaintiffs' complaint is **DISMISSED** without prejudice.  **Within fourteen (14) days from the date of this Order**, Plaintiffs may file an amended complaint addressing the deficiencies described above.  If Plaintiffs do not file an amended complaint within that time, the Court may dismiss this action with prejudice.

DATED this 31st  day of March, 2021.

*Richard A. Jones*

The Honorable Richard A. Jones
United States District Judge

ORDER - 11